Dear Mr. Manning:
You have requested an opinion of the Attorney General regarding our interpretation of the statutes relating to the Louisiana Enterprise Zone Act (Act). You present the following factual scenario.
A business applying for the Enterprise Zone Program (Program) currently operates a manufacturing facility in Louisiana. The facility employs approximately 2,500 employees. The item produced at this facility is nearing the end of its product life. Contingent upon new product approval, production of the existing product is scheduled to cease in mid to late 2002. Once production on this item stops, the facility would require extensive retooling and renovation before it could begin to produce the new product. Such a process would require closing the facility and laying off most of the employees for a minimum of six months.
One of the company's current options includes the construction of a new plant next to the existing facility. Under this plan, most of the existing facility would eventually be idled, and the new plant would begin producing the new product line. The decision of where to construct the new facility has not been made. It could be located in Louisiana adjacent to the existing facility, or in another state. Obviously, if the new facility is not located in Louisiana, all of the existing jobs would be lost. If the new facility is built in Louisiana, the existing jobs would be retained, but the company may not have to increase its employee work force.
You further state that the company in question is an important part of the Louisiana economy and contributes to the diversification and well being of the local economy in the area in which it is located. The department desires to offer the Program to the company if it builds its new facility in Louisiana, and would like to recommend to the Board of Commerce and Industry (Board) that it enter into a contract pursuant to R.S. 51:1787.
You specifically ask whether the construction of a new facility which employs the same or fewer number of employees meets the condition imposed by R.S. 51:1787(B)(6). It provides as follows:
 § Incentives
 * * *
 B. The board may enter into the contracts provided in Subsection A of this Section provided that:
 * * *
 (6) The business creates a minimum of the lesser of five net new permanent jobs to be in place within the first two years of the contract period, or the number of net new jobs equal to a minimum of ten percent of the existing employees, minimum of one, within the first year of the contract.
Initially, we note that the provisions of Section 1782 provide as follows with respect to the legislative declaration of purpose:
 § 1782. Declaration of purpose
 The legislature of Louisiana hereby finds and declares that the health, safety, and welfare of the people of this state are dependent upon the continued encouragement, development, growth, and expansion of the private sector within the state. The legislature further finds and declares that there are certain depressed areas in the state that need the particular attention of government to help attract private sector investment into these areas, as well as many local economic efforts which could benefit from the assistance and input of state government. Therefore, it is declared to be the purpose of this Chapter to stimulate business and industrial growth in these areas of the state by the relaxation of governmental controls, by providing assistance to businesses and industries, and by providing tax incentives in these areas. It is further declared that the effective administration of both the enterprise zone program is the sole responsibility of the Department of Economic Development which, by state law, is charged with coordinating those plans and programs aimed at developing optimum conditions for new and expending industrial and commercial enterprises in this state with units of local government.
As can be gleaned from the above, the Act and Program were created by the Legislature to stimulate economic growth in certain depressed areas of the State by attracting private sector investment into said areas. Section 1787(A) provides that the incentives offered thereunder are applicable to purchases of any materials used in the construction of a building, or any addition or improvement thereon, as well as the machinery and equipment used in the business enterprise.
In Opinion No. 86-45, this office addressed the issue of the application of the Act to the reopening of an existing plant. Therein, we concluded:
 . . . the Legislature "willed" the incentives provided for by the Enterprise Zone Program to go to "newly" constructed buildings or additions, and not to previously existing buildings.
 Nevertheless, the Enterprise Zone Program allows for taxing incentives to "new industry" located within an urban or rural enterprise zone and which meet the requirements of the Enterprise Zone Program (R.S. 51:1781 through 1790).
 Therefore, so long as the reopening of the Amax plant meets the requirements of the Enterprise Zone Program and the closing and reopening was not fraudulently conceived to "reap" the benefits offered by the Program, then the reopening of the plant may be considered by the Board for qualifications as a new business and new jobs under the Enterprise Zone Law and rules of the Board of Commerce and Industry.
We believe the reasoning in Opinion No. 86-45 clearly supports the applicability of the Program to the new facility contemplated in your scenario. Accordingly, the jobs created from the construction of the new plant would constitute the requisite "net new permanent jobs" required under Section 1787(B)(6). Our opinion is predicated on the Board's finding that (1) the new facility was not fraudulently conceived and (2) the business complies with the Act and the rules of the Board.
Trusting this adequately responds to your inquiry, I am.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob3/sfj